UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

Shaneka Boucher,

        Plaintiff,

v.

NRI Group, LLC,

        Defendant.

------------------------------------x

07 CV 1245

JUDGE KOELTL

**COMPLAINT**

TRIAL BY JURY
**ECF Case**

## NATURE OF THE ACTION AND THE PARTIES

1. This is an action to redress unlawful discrimination based on pregnancy, unlawful harassment, and unlawful employment practices, under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq. and the New York City Human Rights Law, ("NYCHRL").

2. Plaintiff Shaneka Boucher ("Ms. Boucher" or "Plaintiff") is an adult citizen of the United States residing in Brooklyn, New York.

3. Defendant NRI Group, LLC ("NRI" or "Defendant") is a corporation incorporated under the laws of the state of New York with corporate offices and/or a principal place of business in New York, New York.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over Plaintiff's claims pursuant to Title VII, 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343, 1367(a) and 2201.

5.  Venue is proper in this district pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391(b) and (c).

6.  In November 2006, Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

7.  On November 22, 2006, the EEOC issued a Notice Of Right To Sue, which Plaintiff received several days later.

8.  Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

9.  Plaintiff seeks an award of appropriate relief.

## FACTS

10. NRI is in the business of administering care for those recovering from drug addiction.

11. In August 2004, NRI hired Ms. Boucher for the position of Receptionist.

12. Through diligent work and recognition for outstanding performance, Ms. Boucher was promoted to a supervisory position.

13. At all relevant times, Ms. Boucher was fully qualified for her position with NRI and performed well.

14. In the beginning of October 2005, Ms. Boucher missed a day of work because she had suffered from an unidentified illness. Nonetheless, she worked over the weekend to make-up for the time she was absent from work.

15. After several more episodes of this unknown illness, Ms. Boucher sought medical attention. It was at this time, on October 18, 2005, she was informed by her physician that she was not suffering from some unknown illness, but rather, she was pregnant.

16. The joy of Ms. Boucher's blessed event was shared with the staff of NRI and her immediate supervisor, Ms. Ebony Edwards.

17. During the week of October 24, 2005, Ms. Boucher again suffered from an illness from the complications of her pregnancy. She was later admitted through the Emergency Room of Woodhull Hospital, Brooklyn, New York. There, the doctors advised her that she will need to reduce her activities, including but not limited to, work related activities. She informed Ms. Edwards of her condition and the doctors' recommendations in order her to have a healthy child.

18. While she was on bed rest recovering from her illness, Ms. Boucher was in constant contact with her staff and supervisors through telephone and electronic correspondence from her personal computer. Thus, there was no question that Ms. Boucher has the sophistication to perform her executive functions while on bed rest.

19. Although she was not fully recovered from her illness, nonetheless, Ms. Boucher returned to work on Saturday, October 29, 2005, in order to begin to make-up

for time away form work due to her condition. Because she was not in full recovery, Ms. Boucher could only stay a few hours. She again returned the next day, Sunday, to continue to make-up for time away from work. Ms. Boucher continued to keep her supervisors and Ms. Edwards informed of her condition. They were unsympathetic.

20.    After being informed by her physicians that she may have a difficult pregnancy that could be exacerbated by a strenuous work schedule, Ms. Boucher contacted Ms. Edwards with the hope of working out a schedule that would be a reasonable accommodation to her and to NRI in order to makeup for the time she may be away from work due to the complications of her pregnancy.

21. On October 31, 2005, the day Ms. Boucher returned to work, her supervisor commenced a series of unwarranted criticism for poor work performance. From the acts and behavior of her supervisor, Ms. Edwards, it was evident to Ms. Boucher that a plan was in place to undermine her supervisory authority and to unfairly characterize her work as unfit in order to form a pretext for her eventual unlawful termination.  Rather than taking a leave of absence as suggested, Ms. Boucher pushed for an arrangement for a work schedule would take into consideration that from time-to-time she will be suffering from pregnancy related illness.

22.    Despite the tense atmosphere, Ms. Boucher and her supervisor, Ms. Edwards,  agreed that her work schedule would take into consideration that indeed from time-to-time she will be suffering from pregnancy related illness that are likely to occur in the morning. According, it was agreed that her work day would start mid-morning.

23. The next significant even occurred on or about, Friday, November, 4, 2005. On that day, Ms. Boucher requested a meeting between her, Ms. Edwards, and Mr. Jack Abramson, a company director. The purpose of the meeting was to resolve the now tense work relationship between her and Ms. Edwards. Ms. Edwards rejected such a meeting and the meeting occurred without Mr. Abramson. Instead of meeting to resolve the tension, Ms. Edwards elevated tensions by demoting Ms. Boucher from being responsible for three care centers to one.

24. During the above described meeting, Ms. Edwards informed Ms. Boucher that effective immediately her work day must begin at 6:30 a.m. rather the previously agreed mid-morning start time. Ms. Boucher objected to this sudden and unwarranted change in her scheduled start time. Because Ms. Boucher objected to such a change because such a change would likely place an undue burden on her given the complications of her pregnancy. Rather than discuss the matter or come some other arrangement, Ms. Edwards immediately terminated Ms. Boucher's employment. Thus, it became clear to Ms. Boucher that Ms. Edwards' and NRI's motivation was to place any and all obstacle and to take any measure to make sure that a pretext was available in order to terminate her employment because she was pregnant. NRI through Ms Edwards simply did not want to have a pregnant employee. To further embarrass and humiliate Ms. Boucher, Ms. Edward placed an unnecessary call for a security officer to escort Ms. Boucher out of the building.

25. The next day, Saturday, November 5, 2005, Ms. Boucher was home and she

received a telephone call from a fellow employee who informed her that Ms. Edwards posted a sign in the lobby of the building which stated, in relevant part, that Ms. Boucher was not allowed to enter the building. Furthermore, Ms. Boucher was again informed that her employment was terminated.

26. Ms. Boucher's attempts to speak with any NRI director were refused. Thus, there is no question that NRI endorsed the actions of MS. Edwards with a stamp of approval. NRI unlawfully discriminated against Ms. Boucher regarding compensation, terms, conditions and privileges of employment, and employment opportunities, unlawfully harassed her, and unlawfully discharged her, because she was pregnant.

27. NRI's has refused to offer any other explanation for Ms. Boucher's termination.

28. NRI has refused to cooperate in any pre-suit investigation.

## COUNT I
## (TITLE VII)

29. Ms. Boucher repeats and realleges every allegation in paragraphs 1 through 28 of this Complaint with the same force and effect as though fully set forth herein.

30. NRI employs more than 15 employees.

31. At all relevant times, NRI was an "employer" within the meaning of Title VII. 42 U.S.C. § 2000e (b).

32. At all relevant times, Ms. Boucher was an "employee" within the meaning of Title VII. 42 U.S.C. § 2000e (f).

33. NRI's conduct, as alleged herein, constituted unlawful employment practices and unlawful discrimination on the basis of pregnancy in violation of Title VII. 42 U.S.C. §§ 2000e, 2000e-2 (a).

34. NRI's conduct, as alleged herein, was carried out with malice or reckless disregard for Ms. Boucher's protected rights to be free from discrimination, harassment, and retaliation.

35. As a result of NRI's unlawful conduct, Ms. Boucher has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Ms. Boucher is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from NRI under Title VII.

36. As a further result of NRI's unlawful conduct, Ms. Boucher has suffered and continues to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Ms. Boucher is entitled to recover damages for such injuries from NRI under Title VII.

## COUNT TWO
## (NYSHRL)

37. Ms. Boucher repeats and realleges every allegation in paragraphs 1 through 36 of this Complaint with the same force and effect as though fully set forth herein.

38.     At all relevant times, NRI was an "employer" within the meaning of the NYSHRL. N.Y. Exec. Law § 292 (5).

39.     At all relevant times, Ms. Boucher was an "employee" within the meaning of the NYSHRL, and a "person" within the meaning of the NYSHRL. N.Y. Exec. Law §§ 292(1), 292(6).

40.     NRI's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of pregnancy in violation of the NYSHRL. N.Y. Exec. L. §§ 296(1) (g).

41.     As a result of NRI's unlawful conduct, Ms. Boucher has suffered and continues to suffer injury, with resulting monetary and other damages, including without limitation lost wages, lost back pay and front pay, lost bonuses, lost benefits, lost pension and retirement earnings, lost interest and attorneys' fees and costs. Ms. Boucher is entitled to recover such monetary and other damages, from NRI under the NYSHRL.

42.     As a further result of NRI's unlawful conduct, Ms. Boucher has suffered and continues to suffer, among other items, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation. Ms. Boucher is entitled to recover damages for such injuries from NRI under the NYSHRL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment as follows:

(A) On Count One, enter a judgment declaring the acts and practices of Defendant to be in violation of Title VII. 42 U.S.C. § 2000e-5(g);

(B) On Count One, award Plaintiff as against Defendant loss wages, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost as a result of said Defendant's unlawful discrimination, unlawful harassment, in accordance with Title VII.

(C) On Count One, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination and unlawful harassment in accordance with Title VII.

(D) On Count One, award Plaintiff as against Defendant compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with Title VII.

(E) On Count One, award Plaintiff as against Defendant the cost of this action, together with reasonable attorneys' fees, in accordance with Title VII.

(F) On Count Two, enter a judgment declaring the acts and practices of Defendant to be in violation of the NYSHRL. N.Y. Exec. L. § 297(9);

(G) On Count Two, award Plaintiff as against Defendant consequential damages for losses resulting from Defendant's unlawful discrimination and unlawful harassment in accordance with the NYSHRL. N.Y. Exec. L. § 297(9);

(H) On Count Two, award Plaintiff as against Defendants compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in accordance with the NYSHRL. N.Y. Exec. L. § 297(9);

(I) Grant Plaintiff such other and further relief as may be necessary and proper.

## JURY DEMAND

Plaintiff demands a jury trial for all issues triable by jury.

Dated: New York, New York

February 16, 2007

By: _____
Locksley O. Wade (LW 0078)

Law Office of Locksley O. Wade, LLC
15 West 39th Street, 3rd Floor
New York, NY 10018
(212) 220-3610
(212) 253-4142 Fax
lwade@lwade-law.com
*Attorney for Plaintiff*